UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:22-CR-00106-DCR-MAS-1 |
| v. | ) | |
| | ) | |
| ANTONIO SMITHER, | ) | |
| | ) | |
| Defendant. | ) | |

## DETENTION OPINION & ORDER

The Indictment charges Defendant Antonio Smither ("Smither") of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DE 1]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(E), [DE 8], and the Court conducted a detention hearing on September 27, 2022. [DE 12]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

### I.   BRA FRAMEWORK

The United States bears the burden of establishing that detention is warranted. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001).

1

Importantly, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance.").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

At the hearing, the United States sought Smither's detention only on the basis that his release would pose a risk of danger; the United States did not argue detention based on risk of flight or nonappearance.[1] Specifically, the United States presented proffer, primarily through the Pretrial Services Report ["PSR"], prepared by the United States Probation Office ("USPO"), and the witness testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Megan Knotts to establish that Smither's charged conduct, criminal history, and

---

[1] The United States' arguments at the detention hearing were focused exclusively on Smither's perceived risk of danger. Moreover, during summary arguments, the United States appeared to concede that Smither did not pose a risk of flight or nonappearance. [Hearing Record at 42:18 - 42:40 ("To me he is a danger. He may show up because [his sister] is driving him to see his parole officer, but I think that he is a danger because he has been using drugs, he has been around firearms, he has been found in possession of a firearm . . . .")]. For this reason, and because the Court finds that Smither's detention is warranted based on his risk of danger to the community, the Court does not address whether detention is warranted based on Smither's risk of flight or nonappearance.

unwillingness to abide by release conditions warrants detention in this case.  Smither presented

the testimony of his maternal half-sister, Angela Redmond ("Redmon"), and proffer to support his

argument that his release would not present a risk of danger to any person or the community.

Analyzing below the BRA factors as they relate to danger, the Court agrees with the United

States.  The records clearly and convincingly establishes that Smither's release would present an

irremediable risk of danger to the community.   As such, the Court grants the United States' motion

for detention.

### 1.        Nature and Circumstances of the Offense

The nature of the offense, though not triggering a presumption of danger, weighs in favor

of detention because it involves a firearm.  *See* 18 U.S.C. § 3142(g)(1) (directing the court to

consider "nature and circumstances of the offense charge, including whether the offense . . .

involves . . . a controlled substance [or] firearm[.]").  It further involves possession of a firearm by

a prohibited person, as Smither had been previously convicted of a crime punishable by

imprisonment for a term exceeding a year.

### 2.        Weight of the Dangerousness Evidence

The second factor gauges "the weight of the evidence against the person."  18 U.S.C.

§ 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition,

family ties, employment, financial resources, length of residence in the community, community

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

appearance at court proceedings" and whether, at the time of the current offense the person was

on probation or pretrial release).  "This factor goes to the weight of evidence of dangerousness,

not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.  Although codified

as a distinct factor, consideration of the weight of danger evidence against Smither overlaps with

consideration of the third and fourth BRA factors, Smither's history and characteristics and the

nature and seriousness of the danger to the community that would be posed by Smither's release. 18 U.S.C. § 3142(g)(3),(4).

Although Smither was charged with only one count of possession of a firearm by a convicted felon, his conduct over the past year indicates a high risk of danger. At the hearing, Knotts testified to three separate instances in which Smither was found to be driving a vehicle belonging to another person that contained either drugs or firearms, including the incident that led to the underlying charge in this matter. First, on August 26, 2021, law enforcement encountered Smither driving a Ford Explorer shortly after midnight in Madison County, Kentucky. The owner of the Explorer had given Smither permission to drive the vehicle, but not to do so outside of Lexington, Kentucky. Smither had travelled to Madison County after learning his son was involved in a car accident there. While Smither was there, a Madison County Deputy Sherriff briefly followed Smither's vehicle, and Smither voluntarily pulled to the side of the road, exited the vehicle, and approached the Deputy Sheriff. After following Smither back to his vehicle, the Deputy Sheriff spotted a firearm in the vehicle. Knotts testified that the firearm belonged to an acquaintance of Smither, who later told Knotts that she had been a passenger in the Explorer earlier that evening and had simply left her firearm under the passenger seat. Although the acquaintance told Knotts that she did not think Smither knew that the firearm was in the vehicle, the Deputy Sheriff apparently spotted the firearm on top of the passenger seat in plain view. Smither was charged with possessing the firearm in the instant case.

Then, in October 2021, a police officer in Lexington, Kentucky, encountered Smither driving a stolen Chevrolet Impala with multiple passengers. Officers questioned Smither and the passengers at the scene and learned that Smither and one of the passengers were paying another person a daily fee to drive the car. Officers found one firearm in the car, one firearm on a

passenger's person, and crack cocaine in various locations inside of the vehicle. One of the passengers admitted that the firearms were hers, and another passenger was charged with possession of the crack cocaine.

Finally, on February 22, 2022, Smither was again encountered by law enforcement in Lexington, Kentucky, while driving a vehicle that did not belong to him. Smither was alone, and officers found a firearm, ammunition, eight grams of suspected crack cocaine, several cell phones, and a scale inside the vehicle. The vehicle was registered to the father of Anthony Brown. Brown had been a passenger in the vehicle earlier that day, but Smither dropped him off at a hotel prior to officers' encounter with Smither. Knotts interviewed Brown, and he stated that neither the firearm nor the crack cocaine was his.

In addition to Smither's encounters with law enforcement over the past year, his criminal history as stated in the PSR reflects multiple violent, serious offenses and a disregard for release conditions. Smither was charged with fourth-degree aggravated assault in both 1994 and 1997 and first-degree robbery in 2001. He received a 20-year sentence for the 2001 robbery charge, and he was paroled in 2008. However, just three months after his release from prison in 2008, Smither's parole was revoked after he was again charged with first-degree robbery. As the PSR indicates, Smither caused injury to the victim of the robbery by allegedly striking her in the face. Witnesses pursued and detained Smither, but only after Smither broke through a window at a fire station in an attempt to flee. Smither received another 20-year sentence for the second robbery but was paroled in 2018. Smither was on parole for just over three years at the time of his conduct that led to the instant firearm-possession charge.

Finally, per the PSR, Smither indicated he has a substance use issue with crack cocaine. Smither acknowledge having used the drug heavily until 2001. He admitted to relapsing in August

of 2021 when he submitted a positive drug screen in relation to his state parole. Smither indicated at the hearing, however, that he currently participates in outpatient substance use disorder treatment.

In sum, Smither has both a significant criminal history that includes violent crimes and parole violations and a recent record of, at a minimum, closely associating with firearms and narcotics. For these reasons, there is weighty evidence of Smither's dangerousness, and the second BRA factor weighs heavily in favor of detention.

### 3. History and Characteristics

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

As discussed in the Court's analysis of the second BRA factor, Smither's significant criminal history and recent encounters with law enforcement indicate that his release would present a danger to the community. Smither's criminal history includes two assault charges and two robbery charges, and his conduct over the past year demonstrates that he continues to involve himself with criminal activity, at least tangentially. Smither's substance use disorder history, including at least one instance of recent drug use while on state parole, also suggests that his release would pose a risk of danger to the community. *See, e.g.*, *United States v. Turkette*, No. 1:18-CR-82-TLS, 2018 WL 4793113, at *3 (N.D. Ind. Oct. 4, 2018) (finding that a fifteen-year history of substance use disorder coupled with recent weekly use of controlled substances while on state conditional release was aggravating and indicated dangerousness).

Perhaps most concerning to the Court, however, is the fact that Smither was on parole from his second robbery charge at the time of the instant offense. And as noted above, Smither was on parole for just three short months before committing a second first-degree robbery.

On the other hand, Smither's family support and ties to the community weigh in his favor. At the hearing, Smither's maternal half-sister, Angela Redmond, testified that Smither could be released to reside at her home in Lexington, Kentucky, that she would provide transportation to ensure that Smither continues to attend work and show up for his court appearances, and that she would ensure criminal activity would not occur at her residence. This mitigates some, but not all, of the Court's concerns about Smither's danger, as Redmond also acknowledged that she could not control whether Smither would ultimately continue to engage in criminal activity outside of her presence. Indeed, Redmond testified that Smither resided with her at the time of his three encounters with law enforcement in 2021 and 2022.

Ultimately, on balance, the Court finds the third BRA factor also weighs in favor of detention. Smither's criminal history, past conduct, and demonstrated willingness to engage in criminal activity while on state parole indicate a high risk of danger, even considering Redmond's assistance.

### 4. Nature and Seriousness of the Danger Posed by Smither's Release

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

As the Court acknowledge in its analysis of the second BRA factor, the risk of danger posed to the community by Smither's release is significant considering his criminal history and recent conduct involves assault, robbery, and possessing a firearm. And Smither's willingness to engage in criminal activity while on state parole increases the risk that Smither's release will be

dangerous to the community.  Accordingly, the nature and seriousness of the danger risk Smither's

release would create is too great, and this final factor tips decisively in favor of detention.

### 5.        Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Smither presents a risk of danger to

the community if released based primarily on his significant criminal history and his recent close

association with criminal activity.  Although Smither was adamant at the hearing that he would

not pose a danger to the community if released and that drug-testing and electronic monitoring

conditions could ensure his compliance with release conditions, the Court is unconvinced.  While

the Court commends Smither for his apparent commitment to address his substance use disorder

issues and to maintain employment, the Court hesitates to release Smither to the community when

his recent conduct demonstrates that he continues to closely fraternize with criminal activity even

while on parole from his state robbery charge.  Such behavior leaves the Court unconvinced that

Smither's compliance with release conditions is reasonably likely even taking into account

Redmond's commitment to providing a crime-free environment to which Smither's could be

released. *See United States v. Hir*, 517 F.3d 1081, 1093 n.13 (9th Cir. 2008) (observing that,

barring a "replica detention facilit[y]," the success of any condition combination necessarily

"hinge[s] on [the defendant's] good faith compliance");  *see also United States v. Mack*, No.

CV113CR00150RC, 2014 WL 12684474, at *2 (D.D.C. June 12, 2014), *aff'd*, 841 F.3d 514 (D.C.

Cir. 2016) (concluding, "given [the defendant's] previous history of drug use and possession and

his poor record of complying with the provisions of probation and supervised release," that even

"release into high intensity supervision would still pose some danger to the community").

Accordingly, the Court concludes that the United States has shown, by clear and

convincing evidence that no combination of available conditions can reasonably assure community

safety in light of the serious danger risk in this case.  The BRA mandates detention.

### III.   CONCLUSION

Accordingly, the Court grants the United States' oral detention motion.  The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 6th day of October, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY