UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-106-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANTONIO SMITHER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

&ast;&ast;&ast;   &ast;&ast;&ast;   &ast;&ast;&ast;   &ast;&ast;&ast;

Defendant Antonio Smither filed a motion to suppress evidence seized during a traffic stop on August 26, 2021.  In support, Smither argues that the police officer did not have a sufficient reason to seek his identification or search his vehicle. The parties submitted briefs on the contested issues [Record Nos. 17, 22] and the Court held an evidentiary hearing on December 16, 2022.  The motion will be denied because Smither's encounter was consensual, and the firearm seized was in plain view.[1]

## I.

Officer Blake Arnett of the Madison County Sheriff's Department observed Smither's vehicle slowly moving, making a three-point turn, and changing directions near Main Street in Richmond, Kentucky in the early morning hours of August 26, 2021.  Smither pulled to the side of the street a few moments later with his emergency lights flashing.  Arnett parked behind Smither's vehicle, activating his police lights consistent with standard police procedure.  Both

---

[1]  After reviewing the defendant's supplemental brief, the Court determines that a response from the United States is not needed.

Arnett and Smither exited their vehicles. Smither advised Arnett that he was lost and searching for his son, who apparently was in a car accident that evening somewhere in the vicinity. Arnett indicated that he could help Smither but requested Smither's identification before proceeding. (Again, Arnett was following standard police procedures in requesting Smither's identification.) Smither did not have a license on his person and returned to his vehicle to look for identification. Arnett followed Smither asking whether he had any firearms in the vehicle. Although Smither indicated that he did not, Arnett observed a pistol laying on the passenger seat of Smither's car. However, Arnett did not react to the firearm or confront Smither about his earlier statement. Smither could not locate identification but offered Arnett his social security number instead. Dispatch indicated that there were no warrants for Smither's arrest but reported that Richmond police may want to speak with him regarding an accident earlier that evening.

Madison County Sheriff Officer Adam Quiles arrived around this time and informed Smither that the Richmond police may have information about his son. In response, Smither indicated his desire to remain and speak with Richmond officers. Arnett engaged in small talk with Smither while waiting. During their conversation, Arnett asked Smither his feelings about police and whether Smither had interacted with officers previously. Smither responded by telling Arnett that he had been in trouble police before and had a felony conviction. Arnett then asked dispatch to "run a criminal history check," which confirmed that Smither was a convicted felon. Officers then seized the gun from Smither's vehicle, confirmed that it had not been stolen, and placed Smither under arrest.[2]

_____

[2]     Another individual, Sheronda Mack, purportedly was the original purchaser of the pistol. Mack stated to agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives

## II.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. "A seizure occurs when 'under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away.'" *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Saperstein*, 723 F.2d 1221, 1225 (6th Cir. 1983)). A consensual interaction is a "permissible, warrantless encounter[] between the police and citizens." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citing *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004)). It occurs when "contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions." *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009). This encounter "is permissible without any particularized suspicion because no seizure has occurred for purposes of the Fourth Amendment." *Alston*, 375 F.3d at 411.

"As part of a consensual encounter, an officer may approach an individual, ask a few questions, ask to examine the individual's identification, and even ask for consent to search 'as long as the police do not convey a message that compliance with their requests is required.'" *United States v. Madden*, 682 F.3d 920, 925 (10th Cir. 2012) (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no

---

that she was in Smither's car on the evening of his arrest and had placed the pistol under the front passenger seat. However, she claimed that she forgot to remove the weapon when she exited the vehicle.

reasonable suspicion is required." *Bostick*, 501 U.S. at 434 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).

"A search within the meaning of the Fourth Amendment occurs whenever the government intrudes upon any place and in relation to any item in which a person has a reasonable expectation of privacy." *United States v. Moss*, 936 F.3d 52, 58 (1st Cir. 2019) (citing United States v. Bain, 874 F.3d 1, 12 (1st Cir. 2017); *see also Katz v. United States*, 389 U.S. 347 (1967). "[A] motorist has 'no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.'" *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (quoting *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir. 1996)). If a search or seizure occurs, it must be reasonable and "warrantless searches are typically unreasonable where 'a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-653 (1995)). "Thus, '[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.'" *Id.* (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)).

One exception to the warrant requirement is the "plain-view" exception. *Horton v. California*, 496 U.S. 128 (1990). Officers may seize an object without a warrant under the plain-view doctrine if (1) "police are lawfully in a position from which they view an object"; (2) the object's "incriminating character is immediately apparent"; and (3) "the

officers have a lawful right of access to the object[.]" *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

Arnett approached Smither and asked for identification pursuant to a consensual encounter, and there is nothing to indicate that a reasonable person would not feel free to leave under the circumstances presented.   Smither also did not have a legitimate expectation of privacy in the interior of his vehicle viewable from the outside.   Therefore, police did not conduct a search or seizure by asking for Smither's identification or following him to his vehicle and noticing a firearm through his car window.   Police also acted properly when seizing the firearm without a warrant.   The officers were lawfully outside Smither's vehicle when they viewed the firearm in plain sight, as indicated above, and the firearm's incriminating character was immediately apparent because officers knew at the time of seizure that Smither was a felon, and his possession of a firearm violated the law.

## III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Smither's motion to suppress [Record No. 17] is **DENIED**.

Dated: December 30, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky